## STATE v. NEWTON.

No. 6614.   Decided December 29, 1943.   (144 P. 2d 290.)

562

*E. M. Morrisey* and *E. J. Wilde,* both of Salt Lake City, for appellant.

*Grover A. Giles, Atty. Gen.,* and *C. N. Ottosen,* Asst. Atty. Gen., for respondent.

McDONOUGH, Justice.

Appellant was convicted of involuntary manslaughter. On this appeal he assigns as error, (1) failure to properly instruct the jury, and (2) insufficiency of the evidence to warrant a conviction under the decisions of this court.

This prosecution arose out of an automobile collision at about 1:45 A.M. on June 14, 1942, at the intersection of Sixth South and West Temple streets in Salt Lake City. A Chevrolet operated by the decedent, Merlin A. Tippets, was going east on Sixth South while a Buick driven by defendant Shirel M. Newton was coming from the east on Sixth South and proceeding to make a left turn to go south on West Temple street. It appears that both cars were proceeding into the intersection on a green light. There is some conflict in the evidence as to the precise place within the intersection where the collision occurred, but it appears that it was in the south side and a little east of the center line of West Temple.

The testimony of the state witnesses is that the Tippets car was proceeding due east on Sixth South, and that the Newton car crashed into the left side of the Tippets car while the former was making a left turn; and that when it appeared that the Newton car was turning into the Tippets car by a sharp quick turn, Tippets attempted to turn to the right. The testimony of defendant and his witnesses is that it appeared to them that the Tippets car was going to turn to the right and proceed south. Defendant said he did not pay any further attention to said car until the moment of impact because he was watching for other traffic to make sure it was safe to complete the left turn; and that the Tippets car suddenly crashed into his car. We shall refer to particular details in the discussion of the contention of appellant that there was no proper case to go to the jury.

The State relied on the violation by defendant of a state statute as the proximate cause of death of Tippets, the State contending that such violation was of such a character as to constitute criminal negligence. 57-7-137, U. C. A. 1943, provides:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, *but said driver, having so yielded and having given a signal when and as required*

by this act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn." (Italics added.)

Instruction No. 4, to which defendant excepted, covers, in substance, the portion of the foregoing statute preceding the part we have quoted in italics; and defendant excepted to the failure of the court to embrace in its instruction that portion of the statute which we have italicized. Appellant contends that the instruction fails to properly state the substance of a material part of the statute, and that by omission of a material qualifying part of such statute the instruction was misleading.

If there had been any evidence produced by defendant or by any of the witnesses which might have indicated that the qualifications as to the right-of-way were applicable, the appellant would have been entitled to an instruction covering that part of the statute which was omitted from the instruction in question. We have held that each party is entitled to have his theory of the case which is supported by competent evidence, submitted to the jury by appropriate instructions; and that the failure to present for the jury's consideration a party's theory by appropriate instructions constitutes reversible error. *Pratt* v. *Utah Light & Traction Co.*, 57 Utah 7, 169 P. 868, 869; and *Webb* v. *Snow et al.*, 102 Utah 435, 132 P. 2d 114.

An examination of the record in this case, however, does not disclose any testimony or other evidence which would make the portion of the statute omitted from the instruction applicable. Under the facts of this case the portion omitted could have no application. Hence, the court did not err in failing to include such portion in its instructions. As pointed out hereinafter in further detail, there was no evidence which would even suggest that the driver of the Tippets car had any duty to yield the right-of-way to Newton because appellant admitted that the Tippets car was coming into the intersection at the time Newton

signaled for a left turn. This assignment is therefore over-ruled.

Exception was taken to parts of instruction No. 5 which refer to instruction No. 4, and which set forth the elements required to be proved by the State beyond a reasonable doubt in order to warrant a conviction. We call attention to the following excerpt to which an exception was taken:

"Fifth: That the killing of Merlin A. Tippets was directly and proximately caused, as that term is hereinafter defined for you in these instructions, by the violation of the provision of the statute as set forth in instruction No. 4, *committed in such a manner as to evince on the part of the defendant marked disregard for the safety of others or recklessness.*" (Italics ours.)

Inasmuch as there was no prejudicial error in giving instruction No. 4, the foregoing portion of instruction No. 5 likewise was not error. For the reasons set forth hereinafter the italicized portion of the instruction correctly states the law so defendant could not complain about that part and the jury could not have been misled by the instruction.

Defendant also excepted to the failure of the court to instruct the jury that the phrase "without due caution or circumspection" as used in the statute defining involuntary manslaughter means "criminal negligence." The italicized portion of the quoted subdivision of instruction No. 5 and instructions Nos. 9 and 10 define "criminal negligence" appropriately, so there was no error in the failure of the court to give the requested instruction which stated an equivalent phrase constituting a generic term rather than defining some provision of the statute. The instructions given by the court actually defined more satisfactorily the meaning of "without due caution or circumspection" than the generic term "criminal negligence" embodied in the defendant's request. By instruction No. 10 the court defined "criminal negligence" as different from the term "negligence," and defined "criminal negligence" as amounting to "reckless conduct, or conduct evincing a marked disregard for the safety of others." By instruction

No. 11, the court made it clear that the fact that an accident and death occurred, standing alone, would not establish the charge that defendant violated the law nor that he acted "recklessly or in such manner as to evince a marked disregard for the safety of others." The court further stated that "accidents may happen without any violation of law or criminal negligence on the part of anyone."

Appellant has not pointed out wherein the trial court failed to follow the rules and principles announced by this court in *State* v. *Lingman,* 97 Utah 180, 91 P. 2d 457, *State* v. *Gutheil,* 98 Utah 205, 98 P. 2d 943, or *State* v. *Adamson,* 101 Utah 534, 125, P. 2d 429, although counsel have announced that they rely on these decisions.

Appellant's second contention is that the evidence was insufficient to warrant a conviction on the charge of involuntary manslaughter under the foregoing decisions.
In *State* v. *Lingman,* supra, we laid down some specific rules as to what conduct or violation of law constitutes the unlawful act or the criminal negligence contemplated by the statute defining the crime of manslaughter. In that case the State relied not on the violation of a state statute, but on the purported violation of an ordinance of Salt Lake City which was at variance with the state statute on the same subject, whereas in this case the State has relied on the violation of a state statute designed to safeguard life and to promote safety. In the *Lingman* case [97 Utah 180, 91 P. 2d 466] we said:

"We think the 'unlawful act,' that is, the infraction, must be done in such a manner as to more than constitute a mere thoughtless omission or slight deviation from the norm of prudent conduct. It must be reckless or in marked disregard for the safety of others. When it does that, it passes the stage of mere malum prohibitum and approaches the unsocial aspects of malum in se.   *   *   *   Criminal negligence   *   *   *   means more than mere thoughtlessness or slight carelessness. It means reckless conduct or conduct evincing a marked disregard for the safety of others."

Even when the conduct of defendant is examined solely in the light of his own testimony and without regard to the

evidence produced by the State, it is apparent that such conduct was not mere thoughtlessness or slight carelessness. He testified that he thought that the Tippets car was going to make a right turn, which would mean that said car was going to turn south—in the same direction in which defendant was turning. The width of the streets constituted no excuse for paying no further attention to the Tippet car after appellant saw it in the intersection, for defendant was about to drive his car in the same general direction in which he said he thought the Tippets car was going to travel. Defendant was in the process of executing a left turn, which would mean that he might well strike the Tippets car unless he watched the course in which he drove his own car. Defendant did drive into the Tippets car, as illustrated by the photographs introduced in evidence, which show marked damage to the front of the Newton car and considerable damage to the left front side of the Tippets car.

There was evidence that the collision occurred in the southeasterly portion of the intersection, because of the location of glass, oil, water, eggs, and other items scattered over the surface of the street which came from the Newton car. There was evidence sufficient to justify the jury in finding that the Tippets car was headed east and not turning south, although the fact that both cars were attempting to execute a turn to the south would not warrant the defendant who was approaching from the east, and who of necessity had to enter the westerly portion of West Temple street, to move into the pathway or lane in which he knew the Tippets car would have to travel or be likely to travel, without allowing clearance and without watching to see that the Tippets car had an opportunity to get out of danger. From the physical objects the angle of impact, the distance traveled by each car after the impact, and other evidence, the jury might well conclude that the appellant took a short cut across the intersection to get ahead of the Tippets car—an act fraught with grave danger to life and property, and conduct which the jury could well determine to be reckless and to evince a marked disregard for the safety of others.

Counsel for appellant quote the following from *State* v. *Gutheil*, supra [98 Utah 205, 98 P. 2d 944] : "What was it that Gutheil did or did not do that shows he acted recklessly and in marked disregard of the rights of others or which shows that he drove in a manner dangerous to the lives of others?" Counsel attempt to make this quotation applicable to appellant here. However, the facts in the Gutheil case differed vastly from the facts in this case as a reading of the decision in that case will reveal. Gutheil was not engaged in any act which evinced any recklessness or marked disregard for the rights and safety of others. He was traveling in a designated and marked traffic lane. The other car was coming diagonally across the street into his path. In the effort to avert a collision, apparently assuming that the car intersecting his course of travel would continue its movement, Gutheil swerved his car to the left to go to the rear of it, not knowing and not being able to anticipate that the two boys were pushing it. The two boys were concealed from Gutheil's view, and when they stopped pushing, their car stopped and Gutheil could not clear the rear portion of their car. He was suddenly confronted with an emergency which was not created by any unlawful conduct on his part.

Appellant Newton's conduct was not comparable to that of Gutheil. In executing a left turn appellant knew he was going into a zone of danger to life if another car was in the path which he had to traverse to enter one of the westerly traffic lanes on West Temple street. He saw the Tippets car which had the right-of-way, and he gave no heed to the rights of Tippets. According to the admission of defendant, he paid no further attention to the Tippets car.

We are of the opinion that there was ample evidence of conduct of defendant which the jury could properly find was reckless and in marked disregard for the rights and safety of others. The physical surroundings, the point of impact on the street, the angle of impact, and the testimony of witnesses, including that of appellant himself,

indicate that the appellant's conduct was heedless and reckless in making a left turn into the pathway of a vehicle approaching from the opposite direction, and that he willfully violated the state statute designed to safeguard the rights and lives of persons in intersections. The facts were such as would justify the jury in reaching the conclusion that defendant was taking a long chance of completing his left turn before the Tippets car had a chance to get across the intersection. The judgment is therefore affirmed.

WOLFE, C. J., and LARSON, MOFFAT, and WADE, JJ., concur.