## STATE v. BARKER.

No. 7142.   Decided August 11, 1948.   (196 P. 2d 723.)

See 40 C. J. S., Homicide, sec. 62. Liability for accident at street or highway intersection as affected by reliance upon or disregard of traffic sign, signal, or marking, see note, 164 A. L. R. 8. See, also, 5 Am. Jur. 924.

*E. J. Skeen, J. D. Skeen,* and *F. R. Bayle,* all of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., *Herbert F. Smart,* Deputy Atty. Gen., and *Brigham E. Roberts,* Dist. Atty., of Salt Lake City, for respondent.

WADE, Justice.

The defendant, James L. Barker, Jr., was found guilty of involuntary manslaughter and appeals therefrom to this court. In the early morning of May 30, 1947, Gladys Smith was killed in an automobile accident between a car driven by the defendant and the one in which she was riding

which was being driven by her brother Kenneth Smith. The accident occurred at the intersection of 33rd South and 23rd East Streets southeast of Salt Lake City, Utah. Thirty-third South is a "thru" highway. It runs east and west and there are "stop" signs against the traffic entering it from the north and south on 23rd East.

Defendant was driving north on 23rd East with a companion, Barbara Smith, and the other car was travelling east on 33rd South. The driver, Kenneth Smith, and his wife, and Gladys Smith his sister, were in the front seat and there were three other passengers in the back seat. Each car was proceeding on the right-hand side of the street on which it was travelling and the two cars collided at a point southeast of the center of the intersection. The front end of the Barker car ran into the right-hand side of the front end of the Smith car. The Smith car turned completely over and came to rest upright on its wheels facing south just north of the hard surface of 33rd South street, and 120 feet east of the point of impact. Gladys Smith was thrown from the car and killed instantly. The Barker car came to rest near the northeast corner of the intersection near a utility pole about 26 feet from the point of impact, it was facing toward the northwest.

Both Kenneth Smith and his wife estimated the speed of their car at about 35 or 36 miles per hour as they approached the intersection. He testified that he saw the Barker car approaching the intersection from the south but continued to maintain his speed because he knew there was a stop sign against the other car entering the intersection and he expected it to stop and yield the right of way, that the other car failed to stop and that it was too late for him to stop, and thereby avoid the collision by the time it became apparent to him that the other car was not going to stop, so he turned his car sharply to the left and stepped on the gas hoping to thereby get by in time to avoid the crash. He further testified that he saw the other car approching the intersection when it was from 25 to 50 yards south

thereof, he indicated that the two cars were about the same distance away from the intersection at that time.

There is a service station on the southwest corner of the intersection which is the only obstruction to prevent the respective drivers of these cars from seeing the other car as it approached. The headlights of both cars were lighted at the time. The service station pumps are nearer to the intersection than the station proper. The pumps are far enough back from the intersection so that if a car was approaching from the south on the hard surface of 23rd East street, the driver thereof could see a car which was approaching the intersection from the west on the hard surface of 33rd South street when each car was 110 feet from the intersection. The stop sign on the south side of 33rd South street is slightly more than 20 feet south of the point of impact. At the stop sign and for some distance to the south thereof, there was no obstruction to the vision of the driver of a car approaching the intersection from the south which would prevent him from seeing the lights of a car which was approaching from the west on 33rd South for a long distance to the west. So it is clear that had the defendant looked to the west when he came to the stop sign or for some distance south thereof he could have seen the Smith car lights approaching the intersection from the west.

Defendant testified that he saw the stop sign when he was from 75 to 100 yards or 225 to 300 feet south thereof; that at that time he was travelling from 30 to 35 miles per hour; that he slowed his car nearly to a stop and shifted into intermediate gear and began to pick up speed, that as he came even with the stop sign he saw the lights of the other car approaching from the west and he immediately applied his brakes but his car did not stop as he expected but seemed to pull to the left, that he jerked his wheel to turn it to the right and away from the approaching car but was unable to avoid the collision. His companion, Miss Smith, not Gladys Smith the deceased, testified that as they approached the intersection she noticed that he slowed

the car down and switched gears, that about that time she noticed the other car approaching the intersection from the west but did not anticipate any danger, as the car was slowing down; that later defendant put on the brakes and the car in which she was riding began to swerve, that she looked up and saw the other car was about to collide with them. She estimated that at the time of the impact the speed of the car in which she was riding was 10 miles per hour, and thought the other car was moving rapidly.

Two deputy sheriffs investigated this accident immediately after it happened. Each testified that there was only one tire mark on the pavement south of the intersection, and that this mark commenced on the hard surface of 23rd East slightly past the stop sign and east of the center of the hard surface part of the street and continued to the north for a distance of 20 feet and 3 inches to the point of impact. Each officer expressed an opinion that this tire mark was made by the left front wheel of defendant's car. This evidence substantially supports defendant's testimony that he applied his brakes at that point but that his car seemed to pull to the left but did not stop. Defendant's car contained a proper inspection tag. He testified that he had driven the car often immediately prior to the accident, but he had had no trouble with his brakes, and that this was the only time he remembered of it pulling to the left or failing to stop when the brakes were applied.

Defendant raises two points which require our consideration: First, he contends that the evidence was not sufficient to sustain the conviction. Second, he argues that the court committed prejudicial error in the instructions. We will consider the second question first:

The court gave the following instructions to the jury:

"* * * The state contends that Gladys Smith was killed by reason of the defendant's conduct in violating a statute, in that the defendant * * * is guilty of the crime of running a stop sign, and also failing to yield the right of way.

"* * * It is unlawful for a person to pass a stop sign situated as this was while going north on 23rd East without bringing his car

to a complete stop, but our law says that in every crime there must be a joint operation of act and intent or criminal negligence.

"So that before you could find the defendant guilty of the crime of running the stop sign, you must find that he not only passed that stop sign without bringing his car to a complete stop, but you must also find that he did one of two things, *either that he intended to propel his car past that sign without coming to a complete stop* or else that he was guilty of criminal neglect in failing to know that he was not stopping at that stop sign.

"* * * I instruct you that criminal negligence * * * means more than a mere failure to exercise ordinary care * * * but it means a reckless conduct evidencing a marked disregard for the safety of others * * *. *You must not only believe by proof beyond a reasonable doubt that the defendant failed to stop at the stop sign, and you must not only find that he had an intent not to stop his car at that stop sign* or that he was guilty of criminal negligence, * * * but you must find further that as a proximate result of his conduct in not stopping his automobile and going on into the intersection without yielding the right-of-way to the on-coming car from the left, * * * proximately caused the death of Gladys Smith; * * *

"* * * before you can find this defendant guilty of involuntary manslaughter, you must find the following elements: *First, that James L. Barker, Jr., * * * drove that automobile past the stop sign in the southeast intersection of 23rd East and 33rd South; that he did so without stopping his automobile; that at the time he did so he knew he wasn't stopping his car* or else he was guilty of criminal negligence in failing to know that he wasn't stopping; that he continued into the intersection and caused the accident which caused the death or contributed to the death of Gladys Smith; * * * If you find each and every one of these elements to exist, then you *ought* to find the defendant guilty: * * *" (All emphasis our)

It is clear the jury was instructed that if the defendant intentionally drove by the stop sign without coming to a complete stop, and if the other necessary elements of the crime existed, he was guilty regardless of whether or not the jury found that in so doing he acted recklessly or in a marked disregard for the safety of others. Twice in those instructions the jury was instructed that unless they found that defendant intended to drive past the stop sign without stopping that he could not be found guilty. Thereby, by implication, indicating that if they did so find and also found the other necessary elements of the crime they must

find him guilty. And finally in summing up the court instructed the jury that if the defendant drove by the stop sign without stopping, and knew that he was not stopping, which evidently was intended to indicate that if he intentionally drove by the stop sign without stopping, they *ought* to find him guilty. The word "ought" as it is used in that instruction clearly indicated that the court was instructing the jury what to do as a matter of law rather than merely leaving it up to their discretion whether they found him guilty or not.

Thus the court in substance instructed the jury that if they found that the defendant intentionally drove by the stop sign without stopping and also found the existence of the other necessary elements of the crime, they must find the defendant guilty. The instructions required a verdict of guilty under the above conditions regardless of whether the jury were convinced that in so doing the defendant acted recklessly or in marked disregard for the safety of others. True the instructions did require criminal negligence under another alternative wherein they were instructed that even though the jury entertained a reasonable doubt as to whether the defendant intentionally passed the stop sign without stopping, they were still required to find him guilty if they were convinced he was guilty of criminal negligence in being unable to stop when he intended to. In other words this was an additional condition under which they were required to find defendant guilty, not a limitation to the requirements previously stated. If the law requires that the jury find the defendant guilty of involuntary manslaughter if they are sufficiently convinced that he passed the stop sign without intending to stop, and are also sufficiently convinced of the other necessary elements of the crime, without a further finding that in so doing he acted recklessly or in marked disregard of the safety of others then the court's instructions were correct and the conviction must be sustained. If such was a correct statement of the law then

the evidence is sufficient to sustain the verdict under either alternative.

In instructing the jury the court seems to have relied to some extent on *State* v. *Anderson*, 100 Utah 468, 116 P. 2d 398, where the fact situation was quite similar to the facts in this case. That case does not discuss or determine the problem here presented and therefore is not an authority thereon but some of the rationale of that opinion seems to lend some support to the position taken by the trial court here.

The defense relies on *State* v. *Lingman*, 97 Utah 180, 91 P. 2d 457, 465, where the facts are somewhat similar to the facts here and the exact question involved here was discussed at length. There we slightly rearranged Section 103-28-5, U. C. A. 1943, the statute on involuntary manslaughter without changing the words to read as follows:

"Involuntary manslaughter is the unlawful killing of a human being without malice in the commission of (a) an unlawful act not amounting to a felony, or (b) in the commission of a lawful act which might produce death (1) in an unlawful manner or (2) without due caution and circumspection."

And we concluded therefrom that:

"* * * In manslaughter cases the charge may embrace the causing of death (1) in the commission of an unlawful act not amounting to a felony but malum in se; (2) in the commission of an unlawful act not amounting to a felony malum prohibitum, but of such a sort as to involve a marked disregard for the safety of others or recklessness (both of the above come under arm (a)) * * *; (3) in the doing of an act fraught with apparent danger to human life when such act is done in an unlawful manner; (4) in the doing of the same sort of an act without care or circumspection."

From the discussion in that case it is clear that the present case does not come within category (1) above because malum in se requires the commission of a crime that is not merely prohibited by statute but is criminal by its inherent nature. However it could come under category (2) above in that the driving through a

stop sign or the failure to yield the right of way each constitutes an unlawful act not amounting to a felony. The facts here proved might also come under either category (3) or (4), in that the act which he was doing, i. e. driving his car was not unlawful, but the manner of driving it through a stop sign without yielding the right of way was unlawful, and without due caution or circumspection. Since the pleadings merely charge that the defendant "unlawfully killed Gladys Smith without malice" there is nothing therein to indicate under which of these categories this prosecution proceeded. The discussion in the Lingman case seems to place this type of prosecution under category (2) above and that seems to be the category under which the court gave its instructions. The jury was directly instructed that it is unlawful to pass a stop sign without making a complete stop and throughout the instructions refers to the violation of the law but nowhere refers to the acts here complained of as being done in an unlawful manner or without due caution or circumspection. Further there is nothing in the instructions which require the jury to find that the defendant was doing an act which is fraught with apparent danger to human life, a necessary element of manslaughter under categories (3) and (4) above quoted from the Lingman case.

These instructions did not meet the requirements of arm (a) category (2) in the Lingman case, which requires not only the commission of an unlawful act but that it be "of such a sort as to involve a marked disregard for the safety of others or recklessness." All that these instructions required in this respect was that the defendant intentionally passed the stop sign without stopping. There was no requirement that the jury must be convinced that defendant's conduct constituted a reckless or marked disregard for the safety of others. That such was held to be a necessary requirement to constitute manslaughter under arm (a) category (2) therof as quoted above from the Lingman case is clear from the following quotation where speaking of that branch of the statute we said:

"There are many other rules for driving mentioned in Title 57, the infraction of which may constitute a misdemeanor, but not all of which would constitute the basis for a conviction for manslaughter if death should result from the infraction. Infractions of rules of traffic may run the gamut from mere inadvertence or slight omissions to 'any act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life', which is first degree murder. R. S. 1933, 103-28-3. Concretely illustrated, the gamut of infractions of the traffic laws may range from all but completely stopping at a stop sign before entering a sparsely travelled portion of an arterial highway, to a drunken driver's madly careening down a traffic-laden street. Death from the former would only give rise to a civil action; from the latter perhaps a charge of murder. * * * We think the 'unlawful act', that is, the infraction, must be done in such a manner as to more than constitute a mere thoughtless omission or slight deviation from the norm of prudent conduct. It must be reckless or in marked disregard for the safety of others. * * * Criminal negligence therefore sufficient to satisfy arm (a) of the manslaughter definition means more than mere thoughtlessness or slight carelessness. It means reckless conduct or conduct evincing a marked disregard for the safety of others."

That such is the law has been reaffirmed by many cases since the Lingman case. See: *State* v. *Riddle*, 112 Utah 356, 188 P. 2d 449; *State* v. *Olsen*, 108 Utah 377, 160 P. 2d 427, 160 A. L. R. 508; *State* v. *Thatcher*, 108 Utah 63, 157 P. 2d 258; *State* v. *Newton*, 105 Utah 561, 144 P. 2d 290; *State* v. *Bleazard*, 103 Utah 113, 133 P. 2d 1000; *State* v. *Adamson*, 101 Utah 534, 125 P. 2d 429; *State* v. *Gutheil*, 98 Utah 205, 98 P. 2d 943. Thus under arm (a) category (2) as the manslaughter statute is divided in the Lingman case, it is clear that these instructions authorized the jury to find the defendant guilty without first finding that he was guilty of reckless conduct or conduct in marked disregard for the safety of others and that in so doing the court committed prejudicial error.

But even if the prosecution was under arm (b) category either (3) or (4) as that section is divided in the Lingman case, still a necessary element of the crime thereunder is that defendant be found guilty of an act fraught with apparent danger to human life. In order to meet that re-

quirement it would at least be necessary that such act or conduct of the defendant be reckless or in marked disregard for the safety of others. For the doing of an act fraught with the potentiality of producing death amounts to a reckless or marked disregard for the safety of others. From the opinion in the Lingman case it is apparent that such was the intention thereof. It says:

"The distinct characteristic then of arm (b) is that the act must be one which has knowable and apparent potentialities for resulting in death. If such an act is done in an unlawful manner or without due care and circumspection, the criminal negligence is present. In other words, a dangerous act done in an unlawful manner or even with lack of the care which such an act calls for is done with criminal negligence. It does not require reckless handling or conduct evincing marked disregard for the safety of others. The ingredient of intrinsic dangerousness, plus the unlawful manner or the lack of due care and circumspection demanded by the nature of the act, even be that slight, constitutes criminal negligence. It is quite true that certain infractions of the traffic laws where the violation is done in a reckless manner or with marked disregard for the safety of others may also rise to the level of acts fraught with danger to human life, and perhaps be chargeable either under arm (a) or (b) of the statute." 91 P. 2d 466.

The cases cited above since that time have held that such was the requirement in order to constitute manslaughter without making any distinction between a prosecution under the different arms of the statute. We therefore hold that in order to constitute manslaughter whether ■ it be under categories (2), (3) or (4) the jury must first find reckless conduct or conduct in marked disregard for the safety of others. Here the court authorized the jury to find the defendant guilty without such a finding and therefore the case must be remanded for a new trial.

Was the evidence sufficient to justify a finding that the defendant acted recklessly or in marked disregard of the safety of others? Counsel argues that it was not. He points to an illustration we used in the Lingman case where we said:

"* * * Concretely illustrated, the gamut of infractions of the traffic laws may range from all but completely stopping at a stop sign before entering a sparsely travelled portion of an arterial highway, to a drunken driver's madly careening down a traffic-laden street. Death from the former would only give rise to a civil action; * * *."

The first set of facts in the above illustration very briefly attempts to state a set of facts where no criminal negligence could exist. In its necessary brevity it failed to disclose how the "all but completely stopping at the stop sign" caused the death but it does positively state that "Death from the former would only give rise to a civil action." Defendant seizes on that illustration, since the facts as far as they go are the same as the facts here, to claim that he could not be guilty under that decision of criminal negligence. That set of facts contemplated a death resulting from all but completely stopping at a stop sign. Without other facts not expressly disclosed in the illustration it is impossible to determine whether the death was the result of criminal negligence or not, but since that set of facts was presented to illustrate a non-criminal negligence case, we must assume additional facts in harmony therewith. So if the driver, after carefully ascertaining that no traffic was approaching in the "thru" highway, after he had all but completely stopped at the stop sign, ran down and killed a pedestrian who suddenly darted in front of the car, there would be no criminal negligence. On the other hand, if at the time the driver all but completely stopped at the stop sign, there was traffic in the thru highway approaching so near that a collision could not be avoided, death from such a collision to a person in the car approaching on the thru highway would present a jury question on the criminal negligence of the driver of the car that all but completely stopped at the stop sign. So, while defendant is correct in his contention that the facts as far as they go in the illustration are the same as in the present case, that illustration did not contemplate the additional facts here presented, that when the defendant entered the intersection the other

car was approaching on the thru highway so near that it, constituted an immediate hazard, and so that case is no authority for defendant's contention that the facts here do not support a finding that he was guilty of criminal negligence.

Here it would make little difference whether he stopped at the stop sign or not. The fact that he entered this intersection at a time when another car was approaching so near as to constitute an immediate hazard made it highly dangerous to the occupants of that car regardless of whether he came to a complete stop, or merely slowed down or drove through without even slowing down. The thing that created the danger was the fact that he entered the intersection when a car which had the right of way over him was approaching and that he failed to yield the right of way and thereby caused the accident. It was his duty under those circumstances to look and be sure that there was no car approaching so near as to create an immediate hazard before he drove his car into the intersection. This duty in this respect was just as great if he came to a full stop as if he failed to stop. The fact that there was a stop sign should have told him not only that he must stop, but that if there was a car approaching, the driver would expect him to yield the right of way, and that it would be highly dangerous for him to proceed into the intersection without first ascertaining that no car was approaching so near as to constitute an immediate hazard. If under these circumstances his failure to yield was the result of inattention on his part or because of his failure to observe and see in time that there was a car approaching on the intersecting highway, or if he saw the approaching car in time to yield the right of way and failed to do so, then the jury from those facts would be justified in finding that he was guilty of conduct which was reckless or in marked disregard for the safety of others. That inattention to the traffic and other persons on the highway which results in a driver's failure to avoid great danger and injury to others who are on the highway, has been repeatedly held

by this court to constitute recklessness and to justify a verdict of manslaughter. See *State* v. *Thatcher,* supra, where the driver failed to observe pedestrians who were walking on the shoulder of the highway in front of him. *State* v. *Newton,* supra, where a driver turned his vehicle into the course of a car approaching from the opposite direction. *State* v. *Riddle,* supra, where the driver drove his car around a curve partly on the wrong side of the highway and ran into a car approaching from the opposite direction. The evidence was sufficient to justify the court in submitting the case to the jury, but on account of the erroneous instructions, the case is reversed and remanded for a new trial.

McDONOUGH, C. J., and PRATT and LATIMER, JJ., concur.

WOLFE, Justice (concurring specially).

I concur in the conclusion that the instructions given in this case require reversal for reasons I shall later state.

I am aware that the case of *State* v. *Lingman,* 97 Utah 180, 91 P. 2d 457, must be carefully studied to be thoroughly understood. This court was there confronted with the difficult problem of attempting to articulate antiquated statutes (enacted at a time prior to our presently highly developed state of technological progress) defining the crime of involuntary manslaughter, with new situations arising out of the growth in the use of the automobile; and of laying down rules as to when, under those old statutes, the driver of an automobile involved in an accident, fatal to some one other than himself, was guilty of the crime of involuntary manslaughter. However difficult it may be to follow the intricacies of the reasoning in the Lingman case, I believe that decision has greatly simplified the giving of instructions to the jury in involuntary manslaughter cases arising out of automobile-caused deaths. Since the Lingman case, scores of such involuntary manslaughter cases have been tried under the language of Section 103-28-5,

U. C. A. 1943, without serious difficulty as to instructions. There is no reason why the judges of the trial courts should not follow the rules laid down in that case. They are applicable to the instant case.

It was recognized in the Lingman case, 91 P. 2d 457, 466, that under arm (b) of the rearranged Section 103-28-5, U. C. A. 1943, quoted in the opinion of Mr. Justice WADE, that the required element of criminal negligence might be supplied in the doing of a lawful act *which might produce death* if there was even a slight deviation from due caution and circumspection. The criminal negligence is supplied by the doing, in an unlawful manner or without due care and circumspection, an act which might *produce death*. An example will suffice: Assume that the raising of a heavy safe along the outside wall of an office building would be lawful during certain hours of the day. It might still be an act fraught with great potentialities for danger to pedestrians and traffic and certainly if it fell because of its being lifted by too weak a cable the lawful act of raising the safe would thus be done in an unlawful manner, or without due caution and circumspection, and in a manner which might produce death. This is an example of a lawful act done in an unlawful manner *not* involving an automobile traffic death. The under-quoted language from the Lingman case, 91 P. 2d 466 (quoted in the prevailing opinion), states that the principles suggested by the illustration of the careless raising of the safe are also applicable to certain traffic violations which violations are attended with recklessness or marked disregard for the safety of others. The very language of the Lingman case held this. We were not compelled to wait on the cases decided *since* the Lingman case, as suggested by the prevailing opinion. The Lingman case itself so held. We said:

"The distinct characteristic then of arm (b) is that the act must be one which has knowable and apparent potentialities for resulting in death. If such an act is done in an unlawful manner or without due care and circumspection, the criminal negligence is present. In other words, a dangerous act done in an unlawful manner or even

with lack of the care which such an act calls for is done with criminal negligence. It does not require reckless handling or conduct evincing marked disregard for the safety of others. The ingredient of intrinsic dangerousness, plus the unlawful manner or the lack of due care and circumspection demanded by the nature of the act, even be that slight, constitutes criminal negligence. It is quite true that certain infractions of the traffic laws where the violation is done in a reckless manner or with marked disregard for the safety of others may also rise to the level of acts fraught with danger to human life, and perhaps be chargeable either under arm (a) or (b) of the statute."

I do not think that where the lawful act is such as might produce death and is done in an unlawful manner or without due care and circumspection there need be recklessness nor a marked disregard for the safety of others in the ordinary sense in which we use the word "recklessness." Indeed the doing of a lawful act fraught with possibilities for producing death, or in an unlawful manner or without due care and circumspection, may be considered as the equivalent of doing the act in marked disregard for the safety of others or in a reckless manner. A slight deviation from the norm of caution required in handling high explosives or highly inflammatory materials might be done without due care and circumspection and therefore be the equivalent of being done in a reckless manner or with a marked disregard for the safety of others.

The rules set out in the Lingman case appear to me to make it unnecessary to use arm (b) in automobile-caused death cases. If it were the purpose of the trial court to use arm (b) and thus attempt to give instructions to fit it, he would have made his problem more difficult.

We said in the Lingman case:

"* * * But under the law regulating automobile traffic, driving in an unlawful manner may be looked at as a total unlawful act, rather than broken down into the elements of lawful act of driving, plus an unlawful manner. Paradoxically, the lawful act of driving in an unlawful manner is an unlawful act. Hence, if done with recklessness or with marked disregard for the safety of others, it may as well be considered as falling under arm (a). And of course if the act is fraught with danger to life and done in an unlawful manner, it could hardly be other than done recklessly."

This simplified the problem by bringing all infractions of the rules set out in the Title 57, R. S. U. 1933, as amended by Chapter 48, Laws of Utah 1935 (now known as Title 57, Chapter 7, U. C. A. 1943), regarding the use of automobiles on the highways under one designation of "an unlawful act not amounting to a felony" whenever the act was done with recklessness or with *marked* disregard for the safety of others since we considered that driving (which was itself lawful) became an unlawful act if it were done in an unlawful manner; for example, driving in excess of the speed limit may be considered an unlawful act. Driving through a stop sign is an unlawful act even though the driving part may be lawful (although such failure to stop might not be attended by recklessness). But, as stated in the Lingman case, and as suggested in the main opinion, such unlawful acts may or may not be attended with recklessness or marked disregard for the safety of others and therefore may or may not rise to the level of a criminal act. Driving through a stop sign, or even stopping there and then entering a through highway when another car is approaching so near as to constitute an immediate hazard, are all, in the totality of ingredients, unlawful acts although —to pick out one ingredient—the propulsion along the highway on wheels, if the car is in proper condition for driving, taken by itself is a lawful act. This has simplified very greatly the problem of dealing with those involuntary manslaughter cases arising out of automobile accidents.

But in order to complete the elements necessary to constitute the crime of involuntary manslaughter, there must attend the type of driving which is unlawful, either recklessness or a marked disregard for the safety of others, as another ingredient in the totality of the act. As before stated, in cases where the driving is such as to carry with it a potentiality for producing death the criminal negligence is supplied where it is done without due caution and circumspection. An act which "might" or is likely to produce death when done without due care and circumspection

can be considered as an act done recklessly and without regard for the safety of others.

It then comes down to this: That in *automobile-caused deaths* (1) the commission of an unlawful act within the classification of malum prohibitum, but of such a sort as to involve a marked disregard for the safety of others or recklessness (which come under arm (a) of the rearranged Section 103-28-5, U. C. A. 1943, quoted in the opinion of Mr. Justice WADE); (2) the doing of a lawful act fraught with apparent danger to human life when such act is done in an unlawful manner; and (3) the doing of the same act without due caution and circumspection, may in most every case be reduced to the common denominator of doing an unlawful act not amounting to a felony in a reckless manner or with marked disregard for the safety of others.

A careful reading of the Lingman case discloses everything which has here been said.

May I here call attention to what I consider to be the basic difficulty which besets counsel for the defendant in this case. He quotes the following language from the Lingman case, and refers to it as though it were intended to illustrate a number of specific cases:

> "* * * Concretely illustrated, the gamut of infractions of the traffic laws may range from all but completely stopping at a stop sign before entering a sparsely traveled portion of an arterial highway, to a drunken driver's madly careening down a traffic-laden street. Death from the former would only give rise to a civil action; * * *."

From the very language of this quotation it is quite apparent that what was being concretely illustrated was not definite examples of a series of unlawful acts, but the gamut through which such acts could range. The usual way of blocking out a range or gamut is to give illustrations of situations at both ends of the range. That was attempted to be done in the Lingman case. I agree with the prevailing opinion that there must be read into the fact situation which forms one end of the illustrated gamut of unlawful

acts, the fact that death ensued from the sudden dart of a child or other person in front of the slowly moving but unlawfully non-stopping automobile. This is apparent from the statement that

"death from the former would only give rise to a civil action."

As to the instructions: I admit my inability to understand parts of them. I think, as Mr. Justice WADE suggests, that in instructing the jury the whole course of defendant's conduct, including his conduct in reference to the stop sign and his entering the intersection should be considered together. Whether defendant completely stopped at the stop sign and then started up again and entered the intersection when another car was so near as to constitute an immediate hazard, or whether he was guilty of the latter act and also a failure to stop at the stop sign, the jury should have been instructed that if, under the evidence, they concluded that the sum total of his acts and omissions, (if they found that there were any omissions of required acts) were attended by recklessness or a marked disregard for the safety of others, that would be grounds for finding him guilty of involuntary manslaughter.

I am unable to fathom the meaning of an instruction which designates a "failing to know that he. wasn't stopping" as criminal negligence. The driver would have to be wholly unconscious or utterly wool-gathering if he failed to know that he was not stopping.

I think the jury could find it criminal ngeligence to proceed through a stop sign and out into the intersection when another car was approaching the intersection so close as to constitute an immediate hazard. In such case, the jury could find the whole course of such conduct criminal negligence whether the failure to stop was due to failure to observe the stop sign or due to wilfully ignoring it. Furthermore, if the defendant did stop at the sign and then started up and proceeded into the intersection when another car was approaching so close as to constitute an immediate hazard

the jury could find the defendant guilty of criminal negligence if it found this unlawful act (or in its other aspect lawful driving in an unlawful manner) of so entering the intersection was attended with recklessness or a marked disregard for the safety of others and not merely an error of judgment.

I think that in some places the instructions are not only meaningless, but misleading and unintelligible. It is for that reason that I agree in the reversal. In the Lingman case, the district courts were presented with very definite principles arrived at after many, many hours of deliberations. I see no reason why those principles should not be followed.

From what I have said above, it is apparent that I agree with the language of Mr. Justice WADE—very well stated —reading as follows:

"Here it would make little difference whether he stopped at the stop sign or not. The fact that he entered this intersection at a time when another car was approaching so near as to constitute an immediate hazard made it highly dangerous to the occupants of that car regardless of whether he came to a complete stop, or merely slowed down or drove through without even slowing down. The thing that created the danger was the fact that he entered the intersection when a car which had the right of way over him was approaching and that he failed to yield the right of way and thereby caused the accident. It was his duty under those circumstances to look and be sure that there was no car approaching so near as to create an immediate hazard before he drove his car into the intersection. This duty in this respect was just as great if he came to a full stop as if he failed to stop. The fact that there was a stop sign should have told him not only that he must stop, but that if there was a car approaching, the driver would expect him to yield the right of way, and that it would be highly dangerous for him to proceed into the intersection without first ascertaining that no car was approaching so near as to constitute an immediate hazard. If under these circumstances his failure to yield was the result of inattention on his part or because of his failure to observe and see in time that there was a car approaching on the intersecting highway, or if he saw the approaching car in time to yield the right of way and failed to do so, then the jury from those facts would be justified in finding that he was guilty of conduct which was reckless or in marked disregard for the safety of others. That inattention to the traffic and other persons on the highway

534

which results in a driver's failure to avoid great danger and injury to others who are on the highway, has been repeatedly held by this court to constitute recklessness and to justify a verdict of manslaughter."