396 P.2d 414

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Anastacio GALLEGOS, a/k/a Ted Gallegos, and Juan Ralles Gallegos, a/k/a Ray Gallegos, Defendants and Appellants.**

No. 10109.

Supreme Court of Utah.

Nov. 9, 1964.

gust 11, 1963, who was stabbed to death in the early hours of that day.

Shortly before the stabbing Mike Hoopiiana, while driving south on State Street, Salt Lake City, between Fourth and Fifth South Streets, picked up his friend, Yanes, and drove to a parking lot on the northwest corner of Seventh South and State Streets. Together they walked east to the sidewalk toward State Street at the corner of a building toward the Annex Buffet, when five men with knives drawn came running from behind. One of the five men, defendant Ray Gallegos, backed Hoopiiana against the wall, telling him to keep out of this or he would get hurt. Another, defendant Ted Gallegos, hit Yanes, then stabbed him a number of times, and as Yanes fell to the sidewalk, Ray stabbed him a number of times. These stabbings caused immediate death. Hoopiiana got away and went into a bar for a minute, then went to his car and drove home. He observed as he passed Yanes' body that he was dead. The next day Hoopiiana consulted counsel and later made a written statement of the facts and with great reluctance testified at the preliminary hearing and the trial.

Phil L. Hansen, Salt Lake City, for appellants.

A. Pratt Kesler, Atty. Gen., and Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, for respondent.

WADE, Justice.

Defendants, hereinafter referred to as Ted and Ray Gallegos, appeal from a conviction of murder in the second degree by a jury verdict. They were charged with first degree murder of Raul Yanes on Au-

Defendants contend that the court committed prejudicial error in failing to specifically instruct the jury that to constitute voluntary manslaughter the killing must be willful or intentional or there must be an intention to do great bodily harm.

We have many times held that in "voluntary manslaughter there must be an intention.to kill or do great bodily harm or to do an act knowing the natural and probable consequences thereof will be death or great bodily harm." However, such act must not be previously planned or in cool blood thought out beforehand, but must be committed on "a sudden quarrel or in the heat of passion." [1] This is said to be the common law definition of voluntary manslaughter, which this state adopted by our statutes. The statutory definition is less detailed and more ambiguous. It defines manslaughter as the "unlawful killing of a human being without malice. * * * (1) Voluntary, upon a sudden quarrel or in the heat of passion." [2]

By Jury Instruction No. 11, the court instructed that before they could find defendants guilty of voluntary manslaughter, they must believe from the evidence beyond a reasonable doubt that on August 11, 1963, defendant, without malice, unlawfully killed Yanes, that "said killing was voluntary upon a sudden quarrel or in the heat of passion." This instruction is largely taken from our statute [3] that fails to ex-

pressly require "an intention to kill or do great bodily harm or do an act knowing the natural and probable consequences thereof will be death or great bodily harm." It does, however, contain the wording of the statute which we have construed to mean that such an intent is required.[4] The statutory wording, and the wording of this instruction, both require an unlawful killing without malice, which is voluntary upon a sudden quarrel or in the heat of passion. This unquestionably means that either the killing or the acts causing death must be done voluntarily, i. e., intentionally, upon a sudden quarrel or in the heat of passion. The word, "voluntary," is much used in our language and generally understood, and clearly requires either that the killing or the act causing the death be intentional and not accidental, even though there was no express definition to that effect of the word, "intentionally."

Also, it is generally held, under ordinary factual situations, that where a jury finds the defendant guilty of a greater offense, the giving of an erroneous instruction on a lesser offense is not prejudicial.[5] If the jury were convinced from the evidence

1. See my concurring opinion in State v. Trujillo, 117 Utah 237 at 260, 214 P.2d 626 at 637. On the difference between first degree murder, second degree murder and voluntary manslaughter, see State v. Russell, 106 Utah 116, 145 P.2d 1003; State v. Roedl, 107 Utah 538, 155 P.2d 741; State v. Thompson, 110 Utah 113,

170 P.2d 153; State v. Cobo, 90 Utah 89, 60 P.2d 952.
2. See Sec. 76–30–5, U.C.A.1953.
3. See Sec. 76–30–5, U.C.A.1953.
4. See cases cited in note No. 1 above.
5. See 26 Am.Jur., 546 Homicide Sec. 556; 41 C.J.S. Homicide § 427c(2), p. 297.

beyond a reasonable doubt that defendants were guilty of second degree murder, the failure to spell out in detail the required intentions for voluntary manslaughter could not reasonably influence their decision.

■ Further, here there was practically no evidence of any such quarrel or heat of passion as distinguished from first and second degree murder, which require premeditated planning.[6] The evidence shows that from 1961 to the time of this killing there were two gangs of boys fighting, stabbing and beating each other, and that the defendants belonged to one gang, and Yanes to the other. The evidence further shows that about 10 o'clock in the evening of August 10, 1963, a few hours before the killing, Yanes and others had run from such a fight. And that some time after 12 o'clock the next morning, the other gang caught up with Yanes and stabbed him with no opportunity for him to fight back. Even if the instruction on voluntary manslaughter was supported by the evidence, we conclude that this instruction was not prejudicial error under the law and the facts of this case.

6. See cases cited in Note No. 1 above.

The other errors claimed by defendants deal with the failure to give proposed instructions of legal terms and propositions. We find no prejudicial error therein.

■ The trial court should mold the instructions to fit the facts shown, using language understood by lay people and blend the instructions to the facts disclosed by the evidence and make them as clear in meaning and concise as possible without requiring belabored legal definitions.[7] No doubt the instructions given could have been greatly improved to meet the above requirements, but we conclude after a careful study that they were not as erroneous as the ones proposed, and were adequate to meet the requirements of the law. We, therefore, find no prejudicial error as defendants claim.

Judgment affirmed.

HENRIOD, C. J., and CALLISTER, McDONOUGH and CROCKETT, JJ., concur.

7. See cases cited in Note No. 1 above, also as to civil cases, see Fowler v. Medical Arts Building, 112 Utah 367 at 377–379, 188 P.2d 711 at 715–717.