463 P.2d 811

**STATE of Utah, Plaintiff and Respondent,**

v.

**Iva Lee GILLIAN, Defendant and Appellant.**

**No. 11314.**

Supreme Court of Utah.

Jan. 8, 1970.

---

3. State v. Cutshaw, 7 Ariz.App. 210, 437 P.2d 962, 973.

Stewart M. Hanson, Jr., John D. O'Connell, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, David S. Young, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

CROCKETT, Chief Justice:

The defendant, Iva Lee Gillian was convicted of murder in the first degree for the shooting of Jesse A. Melton in an apartment at 21 West 1700 South in Salt Lake City, in the early morning hours of November 4, 1967. The jury included with its verdict a recommendation of leniency, and accordingly, the defendant was sentenced

to life imprisonment.[1] On appeal the defendant contends that the trial court erred in refusing her requests to instruct on the lesser offenses of second-degree murder, voluntary and involuntary manslaughter; and in admitting evidence concerning a prior offense.

The question presented here is not whether under some view of the evidence the submission of the issue of first-degree murder was justified. Neither is this a case where the defendant has made a deliberate choice of the two extremes, either guilty of first-degree murder, or not guilty, and therefore failed to request included offenses, in which event she would be precluded from complaining about it.[2] The argument for the defendant's position is that this crime may have been so repulsive to the jury's sensibilities that they were extremely reluctant to acquit the defendant outright, but to avoid that result the only alternative given by the court was to return the first-degree murder verdict, when in fact some verdict as to a lesser offense, between those two extremes, may have better suited their judgment as the proper disposition of the case.

One of the foundational principles in regard to the submission of issues to juries is that where the parties so request they are entitled to have instructions given upon their theory of the case; and this includes on lesser offenses if any reasonable view of the evidence would support such a verdict. This is in accord with the authorities generally,[3] and with the adjudications of this court, as stated in a number of cases dealing with instructing on lesser offenses: In the case of State v. Johnson[4] it is said:

That the *defendant is entitled to* have the jury instructed on *his theory of the case* if there is any *substantial evidence* to justify giving such an instruction.

Of similar import is State v. Newton:[5]

We have held that *each party is entitled to have his theory of the case* which is supported by competent evidence *submitted to the jury* by appropriate instructions; and the failure to present for the jury's consideration a party's theory by appropriate instructions constitutes reversible error. [Cases cited.]

1. 76-30-4, U.C.A.1953.
2. A case where the defendant deliberately makes his choice of submitting only two alternatives: the highest degree of the offense, or not guilty, is dealt with in State v. Mitchell, 3 Utah 2d 70, 278 P.2d 618 (1955).
3. See State v. Castillo, 23 Utah 2d 70, 457 P.2d 618; State v. Hyams, 64 Utah 285, 230 P. 349 (1924); State v. Thompson, 110 Utah 113, 170 P.2d 153 (1946); Stevenson v. United States, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896).
4. 112 Utah 130, 185 P.2d 738 (1947).
5. 105 Utah 561, 144 P.2d 290 (1943).

A sound reason for this rule is well stated by Justice Straup in his concurring opinion in State v. Ferguson: [6]

> If in a case of different degrees of the charged greater offense there is sufficient evidence to submit the case to the jury of the charged greater offense, I do not see wherein it is the prerogative of the court to direct the jury of what degree only the jury may find the defendant guilty, or to direct them that, if they do not find him guilty of the charged greater offense they must acquit him. To permit the court to do that is to permit it to be the judge of the facts.

Whether the refusal to give defendant's requested instructions on lesser offenses than first-degree murder is violative of the principles just set forth requires a survey of the facts.

The deceased, Jesse A. Melton, had been staying with one William Miller in an apartment at 21 West 1700 South in Salt Lake City, Utah, for about a week. The apartment was small. It had a kitchen, bathroom, and a combination living and bedroom. Melton slept on the floor alongside of Miller's bed. During the afternoon and evening of November 3, 1967, the deceased and Miller had passed their time drinking an unspecified quantity of whiskey and beer. Late that night one Bernice Simmons, a friend, came to the apartment. The three of them—the deceased, Miller, and Mrs. Simmons—had what was described as a "little party". At some late hour, they bedded down—Melton on the floor and Miller and Mrs. Simmons occupying Miller's bed. There is some conflict in the evidence as to whether the latter two were dressed or undressed and whether one or the other or both were on top of the covers of the bed. Just what their situation and preoccupation may have been is not set forth in the record, nor is the detail thereof of any significance here except as background to the tragic drama which was shortly to occur, and the effect it may have had upon the defendant's condition of mind.

Meanwhile that same evening the defendant had been making plans to go hunting with a friend. The plans fell apart and she was disappointed and upset. She had a bad time trying to sleep and took a number of phenobarbital tablets which she had under a prescription for a heart condition. Early in the morning of November 4, about 5:30 or 6:00 a. m., she started to drive to American Fork to visit a relative. But feeling she was not well enough to drive on the freeway, she changed her mind and decided to visit her "friend" William Miller. They had previously "lived together" for several years and since breaking up had seen each other from time to time.

6. 74 Utah 263, 279 P. 55 (1929).

When the defendant knocked on the door, Miller opened it and she walked in. There she saw Mrs. Simmons with the bedding held up to cover her and with no clothing on her shoulders. The latter remarked "I got drunk last night." Defendant asked Miller what was going on. He replied: "None of your business." She then asked Miller how he could sleep with her when "Speedy" (Mrs. Simmons' husband) was one of his best friends. Tempers flared which brought about profanity and physical violence. The aspect of this occurrence which is material here is that it culminated in Miller slapping the defendant to the floor, kicking her repeatedly and forcing her out of the door. Whereupon she went to her car, and got a .22 pistol, and returned to the window of the apartment. There is testimony that the window was draped and that the apartment was dark. She fired several shots into the room, intending, she says, to scare Miller for what he had done. But unfortunately one of the shots struck and killed Mr. Melton.

■ The usual rule on an appeal in which the challenge is to the sufficiency of the evidence to support the verdict, is that we review the record in the light favorable to the jury's verdict. However, in this situation where the question raised relates to the refusal to submit included offenses, it is our duty to survey the whole evidence and the inferences naturally to be deduced therefrom to see whether there is any reasonable basis therein which would support a conviction of the lesser offenses. Looked at in that light, the jury may have seen the situation here somewhat in this. manner: that inasmuch as the defendant had previously "lived" with Miller, apparently in a common-law relationship, it would not be unnatural to suppose that she still had some strong feelings about and possibly felt somewhat of a possessory interest in Miller; that when she found him practically in flagrante delictu with the wife of a friend, that because of the mental state she was in, and because of anger and jealousy provoked by rejection for another woman, she may have become extremely upset. While one would not want to justify her actions, nevertheless it is not uncommon to manifest some degree of understanding for violent reactions of men provoked by jealous resentment of intrusion upon such interests,[7] there is no good reason why there should be any less indulgence for women.

If the jury accepted her version of the occurrence, that it was in such a state of emotional upset that she got the pistol and fired it into the room several times intending only to scare Miller, her offense could be found to be involuntary manslaughter in that it was a killing which resulted "in the:

7. Cf. Sec. 76-30-10(4), U.C.A.1953, dealing with justifiable homicide.

·commission of an unlawful act not amounting to a felony"; or upon a different view ·of the facts could be found to be voluntary manslaughter as a killing "upon a sudden ·quarrel or in the heat of passion," [8] and the fact that another man accidentally became the victim would not necessarily make the crime one of a higher degree. Without further extenuation, it is also true that if the jury believed that there was an intent to kill, it may not have believed beyond a reasonable doubt some other element required to make the crime murder in the first degree, in which event it would be murder in the second degree.[9]

█ From what we have just stated above it will be seen that we do not analyze this as a case where under any reasonable view of the evidence the defendant must be found either guilty of the greater offense, or not guilty,[10] and we therefore conclude that the instructions on the lesser offenses should have been given.

█ Defendant's assignment of error in the admission of evidence relates to an altercation which supposedly occurred several years previously between her and Miller. The prosecution was allowed, over defense ·counsel's objection, to ask Mr. Miller if he had ever been threatened by the defendant, to which he answered:

"Yes, * * * with a knife."
Later when Miller was asked if he had been cut in this knife incident, and in connection with the objection it was pointed out that whatever happened it was seven or eight years earlier, the court sustained the objection. However, when the defendant took the stand, the trial court allowed the prosecution, over objection, to cross-examine her as to whether she had threatened Miller with a knife. After the objection was overruled, she stated:

A   If I had threatened him with a knife, it would have been in self-defense.

Q   Well, I know, but you did cut him, didn't you?

A   No, I don't recall cutting him.

Q   He had to go to the hospital.

A   That's when I hit him over the head with the percolator. He had two stitches in his head. That wasn't a knife and that's on the record.

In the case of State v. Dickson[11] we have discussed the question of the admissibility of evidence concerning other offenses and pointed out that it is generally admissible when it has some special relevancy

8.  Sec. 76–30–5, U.C.A.1953.
9.  Sec. 76–30–3, U.C.A.1953.
10. In this respect the instant case differs from State v. Gallegos, 16 Utah 2d 102, 396 P.2d 414 (1964) and State v. Ash, 23 Utah 2d 14, 456 P.2d 154 (1969), which deal with situations where upon any reasonable view of the evidence, the defendant was either guilty of the major offense or not guilty.
11. 12 Utah 2d 8, 361 P.2d 412 (1961).

in proving the crime charged, but that it is not admissible if it is merely to disgrace the character of the defendant and prejudice her in the eyes of the jury.

Whatever the incident or altercation between the defendant and Miller seven or eight years ago may have amounted to, we are unable to see any justification for injecting it into the instant case. In addition to the remoteness in time, there are other frailties. There was no other indication that there was pre-existing animosity or "bad-blood" between the defendant and Miller. She had gone to visit him as a "friend" when this trouble arose. To reach so far back for this alleged incident, which at best was a mere unproved accusation, seems to fall within the prohibition just stated of the Dickson case. (All emphasis added.)

Reversed and remanded for a new trial.

CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (concurring in part).

I concur in that part of the opinion concerning the second assignment of error, having to do with prejudice incident to evidence permitted with respect to an altercation that took place seven years before this case. I reserve judgment with respect to the first assignment about included offenses. The facts of this case with respect thereto, present some nice distinctions that are somewhat provocative of debate, which seem to me unnecessary for the decision requiring a new trial.

ELLETT, Justice (dissenting).

I dissent.

The crime of murder is divided into degrees by our statutes. Section 76–30–3, U. C.A.1953, reads:

> *Every murder* perpetrated by poison, lying in wait or any other kind of wilful, deliberate, malicious and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than the one who is killed; or *perpetrated by any act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life;—is murder in the first degree.* Any other homicide committed under such circumstances as would have constituted murder at common law is murder in the second degree.

It thus is apparent that some killings are murder in the first degree regardless of whether there was deliberation or premeditation. In such cases there can be no included offenses. It is either "not guilty" or "guilty of murder in the first degree."

The Utah case of State v. Mewhinney, 43 Utah 135, 134 P. 632 (1913), L.R.A. 1916D, 590, Ann.Cas.1916C, 537, is in point. There defendant while attempting to perpetrate a robbery killed a person other than the victim in order to effect an escape. There, as in the instant case, error was claimed because the trial court failed to instruct the jury on second degree murder. The court at pages 151 and 152 of the Utah Reports at page 638 of 134 P. said:

* * * In this connection it is contended that inasmuch as the information was framed upon the theory of a deliberate and premeditated murder and in view that the court submitted the case to the jury upon that theory as well as upon the statute which provides that murder "committed in the perpetration of or attempt to perpetrate robbery" also constitutes murder in the first degree without deliberation or premeditation, therefore the court should also have submitted the question of second degree murder to the jury. It is true that the court submitted the elements of deliberation and premeditation to the jury. From that it does not follow, however, as contended, that the court should also have submitted the question of an unpremeditated or second degree murder to the jury. Where there was some evidence in this case from which the jury could have found a deliberate and premeditated murder, yet the jury would not have been justified in finding that the murder in question was not committed in an attempt to perpetrate a robbery, and upon the latter question there is not even room for doubt or conflict. *Under our statute a murder so committed constitutes murder in the first degree and legally can constitute nothing else.* True, a jury in any homicide case has the power to disregard the evidence and may find one who is clearly guilty of first degree murder guilty of manslaughter or acquit him.

From this it is assumed that, because a jury may do this, therefore a court must submit all the degrees of murder, and thus give the jury the right to pass upon the several degrees of murder. This contention loses sight of the legal principle involved in the statute just referred to which does not segregate murder committed in the perpetration of or attempt to perpetrate a robbery into degrees. * * *

There are many cases to be found in the Decennial Digest under "Homicide," § 308(3), only a few of which will be referred to in this dissent.

Green v. United States, 95 U.S.App.D.C. 45, 218 F.2d 856 (1955), was a case where defendant was found guilty of arson and of murder in the second degree. He appealed on the grounds that the only murder of which he could be found guilty was murder in the first degree and that the

trial court erred in instructing the jury on murder in the second degree. The Court of Appeals reversed the conviction and in doing so said at page 857:

The first degree murder section of the District of Columbia Code, * * * enlarges the common law definition of that crime by adding thereto, *inter alia*, the unpurposed killing of another in perpetrating arson. So, when the evidence at a trial tends to show the defendant committed arson, and that the fire was the sole cause of the victim's death, the defendant is either guilty of murder in the first degree or he is not guilty.

In State v. King, 433 S.W.2d 825, 828 (Mo.1968), the court held:

This evidence pointed to a killing by one lying in wait, the distinguishing element of murder in the first degree. The evidence showed only such an offense and the court was not required to instruct on second degree murder.

In Silliman v. People, 114 Colo. 130, 162 P.2d 793 (1945), the evidence showed that the defendant had poisoned his wife. The court at page 800 said:

An instruction, to which an objection was made, limited the jury to three verdicts, i. e., (1) murder of the first degree; (2) not guilty, and (3) not guilty by reason of insanity. Defendant took the position at the trial that under the evidence he could be found guilty of murder of the first degree, or murder of the second degree, or involuntary manslaughter. Our statute (sec. 32, c. 48, '35 C.S.A.) specifically provides that murder perpetrated by means of poison shall be deemed to be murder of the first degree. The evidence conclusively established that if the defendant was guilty of a crime in connection with the death of his wife, it was perpetrated by means of poison, and, consequently, if the jury was convinced of defendant's guilt and sanity, no other verdict was proper. If the jury determined from the evidence that defendant committed the crime charged and was legally responsible for his act, it had no choice in the matter; it was obligated to find him guilty of murder of the first degree. * * *

In the present case after the defendant had precipitated an altercation in the home of her ex-adulterous companion by slapping his face, she left the house, went to her automobile, and after securing a revolver returned and fired not less than seven shots at random through a partly opened window into the bedroom, where she knew human beings were located. She could not see where she was shooting, nor did she care.

It well may be that had she shot at her ex-paramour or at his naked companion, the trial judge would have instructed as the main opinion now directs him to do. But this is not a case of shooting at a par-

 

ticular person which might or might not afford some elements of justification for the intended act. Rather, it is a case of perpetrating an act greatly dangerous to the lives of more than one individual, which act evidences the depraved mind of one who is indifferent to who gets killed, be it friend or be it foe. A killing under these circumstances is by our statute murder in the first degree only, and there are no included offenses contained therein.

It matters not how enraged a football player may become. He has no right to throw a hand grenade into the bleachers so as to endanger the lives of others. If he does so, he can only be guilty of murder in the first degree or not guilty. There are no included offenses for him to dangle before the jury in the hopes of having them violate their oath to render a just and true verdict according to the law and the evidence.

The emphasized section of our statute first set out above clearly shows that the killing in this case is murder in the first degree or it is nothing. There was evidence as to the mental condition of the defendant, which the jury considered. By their verdict they rejected any claim of defense by reason of mental incapacity, and this court ought not reverse it simply because the trial court properly instructed the jury as to the permissible verdicts.

If there was ever a case of a killing "perpetrated by an act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life," this is it. This is a case of murder in the first degree or it is nothing.

As to other assignments of error, I would find them to be without merit and would affirm the judgment.