## STATE v. ADAMSON.

No. 6375.   Decided May 6, 1942.   (125 P. 2d 429.)

*Moyle, Richards & McKay,* of Salt Lake City, for appellant.

*Brigham E. Roberts,* Dist. Atty., of Salt Lake City, *Grover A. Giles,* Atty. Gen., and *Zar E. Hayes,* Deputy Atty. Gen., for respondent.

LARSON, Justice.

From a conviction of involuntary manslaughter and judgment thereon in the District Court of Salt Lake County defendant appeals. The assigned errors fall into two groups: (1) The insufficiency of the evidence to sustain the verdict, and (2) errors in the giving and refusing of instructions. There is no conflict in the evidence. The dispute arises as to the interpretation thereof and the inferences that may be drawn therefrom. The facts are as follows: Shortly after 8:00 P. M. on August 8, 1940, the defendant was driving a gasoline truck south on Second West Street in Salt Lake City. From about 4th South to 9th South he was followed by one Moulton in an automobile. Moulton testified that at some point between 4th and 9th South (not otherwise located), the speed was somewhere between 35 and 40 miles per hour. As they approached the intersection of 2nd West and 9th South streets, the semaphore was red as to north and south traffic, and the truck slowed down some for the intersection. Just before defendant's reaching the intersection the semaphore turned green and he made a left turn into 9th South Street and Moulton continued on south along Second West Street. North of 9th South Street, Second West Street is a four-lane thoroughfare, 88 feet wide, while south of the intersection it is a two-lane road, 44 feet wide. Ninth

South, the intersection street, is 80 feet wide. An arc light is at the southwest corner of the intersection, and on both corners of the east side of second west are service stations which were lighted up on the night of the accident. While the semaphore was red for north and south traffic, a Ford car, heading north, waited on the south side of the intersection for the light to change. As the light changed to green the Ford went through the intersection, and behind it was the Kanon boy on a bicycle. Kanon did not have a light on his bicycle as required by law. At a point at or just north of the center of 9th South Street, and substantially straight north of the curb line of 2nd West, south of the intersection the truck struck Kanon hurling the body 18 feet eastward, or within four feet of the curb line of 2nd West, north of the intersection. The bicycle was found 35 feet southeast of the point of impact, and the truck stopped without locking wheels or leaving any track 157 feet east of the point of impact. Kanon suffered injuries from which he died within a few minutes.

That is all the evidence and none of it is in dispute. Is it sufficient to sustain the verdict? Or, in other words, is there evidence to sustain a finding of criminal negligence on the part of the defendant? As we put the test in the case of *State* v. *Lingman,* 97 Utah 180, 91 P. 2d 457, 466: Does the evidence show that defendant was driving "recklessly or with marked disregard for the safety of others? This question must be answered in the negative. The most that can be said is that defendant may have been negligent, but mere negligence is not sufficient to authorize a verdict of manslaughter. In the Lingman case, supra, this court said by Mr. Justice Wolfe:

"Where is the line at which the infraction becomes more than civil negligence, that is, criminal negligence? It is not possible to draw it mathematically. The accordion words like 'mere negligence' and 'gross negligence' or 'wanton negligence' suggest comparisons only and give no absolute rule for guidance. We think the 'unlawful act,' that is, the infraction, must be done in such a manner as to more than constitute a mere thoughtless omission or slight deviation from the

norm of prudent conduct. It must be reckless or in marked disregard for the safety of others. When it does that, it passes the stage of mere malum prohibitum and approaches the unsocial aspects of malum in se. \* \* \* Criminal negligence therefore sufficient to satisfy arm (a) of the manslaughter definition means more than mere thoughtlessness or slight carelessness. It means reckless conduct or conduct evincing a marked disregard for the safety of others."

And in *State* v. *Gutheil*, 98 Utah 205, 98 P. 2d 943, 944, speaking through Mr. Justice Pratt, this court said:

"What was it that Gutheil did or did not do that shows he acted recklessly and in marked disregard of the rights of others or which shows that he drove in a manner dangerous to the lives of others? The record is silent upon this question of fact. A death resulted from the collosion; but from that fact alone we do not presume that any party was at fault. A criminal case requires proof of each element of the crime by evidence that convinces one beyond all reasonable doubt of the existence of each such element. Criminal negligence evidenced by a dereliction of some kind conforming to at least one of the definitions we have set out, is a necessary element of the crime charged here. We are unable to point to evidence of that dereliction and most certainly the jury would find itself in the same dilemma. The case should not have been submitted to them."

There is no evidence of driving recklessly or in marked disregard of the safety of others. No claim is made that defendant at any time drove at a speed prohibited by law or ordinance. No claim is made that the speed itself is reckless. The evidence shows defendant was driving along with the other traffic on 2nd West Street; another truck was driving along side of defendant in the other lane, and the state's witness caught up with the trucks and then followed them to 9th South Street. The record is conclusive that the defendant slowed up for the intersection light and then on the green light turned left. The only witness asked about speed at that point was Fowler, who refused to fix it in miles per hour but said it was slow. There can be no finding of criminal negligence upon the question of speed.

The State contends that even if the foregoing be true, Kanon had the right of way, and if defendant did not yield the way to him that constitutes recklessness or marked disregard for the safety of others. There is no evidence as to where the bicycle was when defendant entered the intersection and turned, but we may well conclude that it was within the intersection or very near it. Had it been daylight it might well be argued that defendant saw or should have seen the boy on the bicycle as he entered the intersection. If there had been a light on the bicycle, as required by statute and the city ordinance which was put in evidence, it could be argued that if defendant had been maintaining a reasonable lookout he would have seen the lighted bicycle, and failure to do so might indicate lack of care at least sufficient to indicate negligence, but mere negligence is not enough. There is no evidence as to how light it was, or as to visibility at the scene, or that the boy could have been seen by the exercise of reasonable care. But it is evident that the boy would not be within the headlights of the truck until the instant of the crash, and unless the boy crossed the line of lights from the service station on the southeast corner the effect of those lights would be to obscure rather than show up a dark object just out of the line of light to a person looking toward the lights. Had the bicycle been lighted, a different situation would have been presented. It is evident therefore that the facts do not show recklessness or marked disregard for the safety of others merely because defendant did not see the boy in time to avoid hitting him, unless the law imposes that conclusion because defendant was turning across the line of travel of northbound traffic. We need not consider what the situation would be had it been daylight, or had the bicycle been lighted or had the accident occurred on the pedestrian lane where defendant might be charged with the duty of expecting or anticipating someone's presence. It certainly is not the law that a driver is guilty of manslaughter just because his vehicle is an instrumentality by means of which someone is killed. Defen-

dant was within his lawful rights in turning to the left when the light was green and crossing the line of northbound traffic. The statute expressly gives him that right. Section 57-7-31, R. S. U. 1933, reads as follows:

"The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but such driver having so yielded and having given a signal when and as required by law may make such left turn, and other vehicles approaching the intersection from the opposite direction shall yield to the driver making the left turn."

It follows therefore that no criminal liability is imposed upon the defendant because he crossed the line of northbound traffic unless he did so recklessly or in willful or wanton disregard of the rights and safety of others. From what we have said it is clear that there is no evidence of such conduct upon the part of defendant. The trial court erred in not granting the defendant's motion to dismiss made when the State rested, as well as defendant's motion for a directed verdict at the close of all the evidence. It therefore becomes unnecessary to discuss the other errors assigned.

The judgment is reversed and the cause remanded to the District Court with directions to dismiss the action.

MOFFAT, C. J., and McDONOUGH and PRATT JJ., concur.

WOLFE, Justice (concurring).

I concur, but I arrive at my conclusions through somewhat different reasoning than does the main opinion. We must take it to be the fact that the truck did slow down "considerably" before it started to make the left turn. On August 5, 1941, the sun set at 7:40 P. M., so we may assume that at the time of the accident, between 8:30 and 9:00 P. M. pre-war mountain time, it was past dusk and darkness had set in. Three specifications of recklessness are set out in the Bill of Particulars: (1) Failing to yield the right

of way. (2) Driving at a speed greater than reasonable or prudent under all the circumstances. (3) Failing to keep a proper lookout while making the turn. Certainly if the deceased lad had the right of way Adamson failed to yield it, but I have doubts as to whether he had it. The deceased did not have a light and in that sense was unlawfully on the highway and therefore unlawfully in the intersection. I do not intend at this time to attempt to draw fine philosophical distinctions between whether one unlawfully driving without lights is lawfully on the highway but unlawfully without lights or whether one is altogether unlawfully driving such a vehicle as is perhaps the case of a minor under sixteen driving a car. *Collins* v. *Liddle et ux.*, 67 Utah 242, 247 P. 476. The case of *Wilcox* v. *Wunderlich et al.*, 73 Utah 1, 272 P. 207, may throw some light on such distinctions. My doubt lies in whether a person can be said to have been reckless in failing to yield the right of way to another who did not have the legally required indications that he was in the right of way when it is not shown that the defendant driver was aware the other was traveling in that part of the roadway. I am cognizant—and I think this must be kept in mind throughout this case—that we are not measuring Adamson's duty with respect to the rights of the deceased lad, but his duty under the law to the general public not to drive in a reckless manner. It is quite conceivable that in this class of cases a defendant might be criminally liable yet escape civil liability because of the contributory negligence of the party injured.

This case is best tested by asking ourselves whether if Adamson had driven as he did without having an accident, a watchful and intelligent officer on the corner who noticed his conduct might have successfully prosecuted an action for reckless driving. And in that light, I shall test out specifications (2) and (3) above set out.

Certain of the evidence points to the fact that Adamson made a sharp turn to the left in such a way as to just miss the car which preceded the lad on the bicycle. In doing this,

the dark part of the intersection to his left in which the bicycle was traveling was not lighted up by the cone of illumination from his lights in time to permit him to stop within the distance as the objects were revealed by that rotating cone of light. But I do not think we can say as a matter of law that it is negligence to make a left turn any faster than the driver was able to stop in the distance on his projected course in which objects were revealed. To so hold would make travel impracticable on certain highways. He may assume that if there is anything in the dark area to his left, in the area on which his lights will in a moment swing, it will itself have lights sufficient to notify him of its presence. The rule would be otherwise as to cross walks as distinguished from intersections. *Barr* v. *Mountjoy*, Cal. App., 122 P. 2d 676.

In the instant case the point of contact with the bicycle, as it may be inferred from the testimony of a witness who was at the time of the accident standing on the southeast corner, was about on the line with the east curb of 2nd West, south of 9th South but north of the center line of 9th South Street. A driver making a left turn is not required to turn on the right side of the center of the intersection at least in the absence of a center button, but he must have had his whole car on his own side of the street to which he is turning while still in the intersection before or at the time he reaches the far curb line of the street which he is leaving. In this instance, 2nd West was considerably wider north of 9th South than south of it. If Adamson was required to reach the prolongation of the east curb of 2nd West as it is located south of 9th South before or at the time he reached his own side of 9th South, he evidently did not do so for the boy was struck while on the north side of the center of 9th South Street. If he was only compelled to reach the prolongation of the east curb of 2nd West as it is located on the north side of 9th South the evidence is silent as to whether his course would have accomplished that. If the imaginary curb line he should have reached is

a line drawn from the southeast curb corner to the north-east curb corner of 2nd West—an oblique line—the evidence does not permit us an inference as to whether his course would have done that. Moreover, the bill of particulars does not specify recklessness in taking a wrong course or too sharply making the turn. Whether, had it done so, there would be a question as to criminal as compared to civil negligence, is not before us.

The matter of proper lookout is tied into the driver's manner and speed in making the turn. Here again it cannot be said that he did not keep a proper lookout merely because an accident happened. As above stated, he might presume that in the dark area which would an instant later in the course of his turn be illuminated by his own lights was free of traffic and objects unless their own signals were sufficient to reveal them from the dark. It cannot therefore be said that a proper lookout means a duty to discern objects in that dark area not properly marked or turning in such a manner that the ratio between turn and speed would always enable him to stop within the distance his lights revealed objects regardless of how near he might be when that happened. It is a known fact that on a turn objects further away are revealed before those close up because the apex of the cone of illumination is at the lights.