## STATE v. BUSBY.

No. 6405.  Decided December 3, 1942.  (131 P. 2d 510.)

See 41 C. J., Motor Vehicles, sec. 1379; 5 Am. Jur., 843; 38 Am. Jur., 1019.

*Benjamin Spence,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., *Zar E. Hayes,* Deputy Atty. Gen., and *Brigham E. Roberts,* of Salt Lake City, for respondent.

WOLFE, Justice.

Defendant, Clifford H. Busby has appealed from a conviction of involuntary manslaughter resulting from a collision of his automobile with a pedestrian who died from the effect of the collision. His appeal raises the question of the sufficiency of the evidence to warrant a conviction.

The evidence against Mr. Busby is, in brief, as follows: About 8:30 p. m. October 21, 1940, at the intersection of First South and West Temple streets in Salt Lake City, defendant was seen driving his car west on First South just west of the intersection. The witnesses who saw him were driving east on the same street. First, a hat was seen to drop from front of defendant's car, then the body of a man fell from a position near the left front fender of the car. The witnesses in their car turned and followed defendant, who did not stop. He was driving about 15 miles per hour while being followed by this witness, and stopped for intersection traffic signals. As the witnesses drew abreast of him, one of them called to him that he had hit a fellow, to which defendant grunted some answer, but did not stop. The witnesses reported the matter to the police, giving defendant's car number.

The man who was hit died from brain injury, and had on his body only the injury to his head and a slight abrasion

on the leg as though it had been scraped along the road. He was an elderly man in apparent good condition. Glasses, of the type he wore and thought to be his, were found near the cross-walk.

About 9:20 p. m., the same night, defendant's wife and a lady friend met defendant going into a tavern. The lady friend expressed the opinion that defendant was drunk. The three went in together and the ladies had beer, but defendant took nothing. They left the tavern together, defendant being confused as to where he had left his car. After going to the car they drove to a hospital in the city several blocks from the tavern. Defendant drove without mishap, with only a slight tendency to drive to the left; but witness was not sure but that he had driven over the center line of the highway. The lady friend, who was the testifying witness, was in the hospital for about one-half or three-quarters of an hour. Defendant dozed in the car with his wife while waiting. When the witness returned she, at the suggestion of the wife, drove the car, defendant directing her. They were picked up by the police and taken to jail. There defendant told conflicting stories. The officers testified that he was drunk and at the time incoherent and confused. He stated that he had had about three glasses of beer about 8 p.m., and also some beer about 3 or 4 o'clock in the afternoon. He told officers that one Harrington was driving the car, but when Harrington was produced, admitted that he had lied. He then said the man who had been driving left the car. Later he followed this by a statement that the stout lady (the one who was driving when they were arrested) was driving when "I" hit the man. The left front light of defendant's car was tilted back.

We have given only the testimony against defendant. His defense was that of an alibi.

Defendant contends (1) That the court erred in admitting in evidence testimony of defendant's intoxicated condition forty-five minutes after the accident and (2) that whether such testimony is admitted or not there is no evidence that

the defendant was intoxicated at the time of the accident and (3) that even though there was such evidence and such is criminal negligence within the tests laid down by *State v. Lingman,* 97 Utah 180, 91 P. 2d 457, there is no evidence that such criminal negligence caused the accident.

As to the first proposition, defendant testified that during the afternoon he had been drinking beer; that he had his last beer about 8 o'clock, and drank nothing after that time. The court admitted evidence that at 9:15 p. m. and for some hours thereafter defendant was drunk. The accident occurred at 8:30 p. m., a half hour after his last drink. On the record the admission of the evidence cannot be error. Where a man has been drinking off and on from 3 to 8 p. m., and is drunk at 9:15 p. m., the jury might, in the light of the evidence of his conduct currently with the accident, well consider those facts and find therefrom that at 8:30 the liquor had so far taken effect that the drinker was so under its influence as to be impaired in his faculties and reactions. In this case, the defendant's apparent unawareness that he hit a man and his unintelligible answer when his attention was called to it within a few moments after the accident, viewed in the light of the testimony that he had been drinking before the accident, are all circumstances from which the jury could conclude that he was intoxicated to the extent that his faculties for keeping a lookout and for control were appreciably impaired.

There was sufficient basis in fact for the inference that Busby was in an intoxicated condition at the time he struck the decedent; there is not only a sufficient basis for the inference that he was so intoxicated that the control of his car was appreciably affected by it but a basis for the inference that he was so drunk that he did not know that he had struck the decedent or, knowing it, he had endeavored to escape by leaving the scene of the accident. If the jury accepted the latter, it would find a guilty knowledge which would itself be the basis for a con-

clusion in connection with evidence that defendant was criminally negligent and that such negligence caused the accident. If the jury concluded that the defendant was in such condition that he did not know he had hit the decedent it is contended that the accident might nevertheless have been caused solely by the negligence of the decedent. Even if the decedent was guilty of contributory negligence, if the defendant was guilty of criminal negligence as defined in the case of *State* v. *Lingman,* supra, and such negligence caused or contributed to the death, the fact that the decedent himself may have been guilty of negligence which also contributed, would not excuse the defendant. The evidence is sufficient to justify a conclusion of criminal negligence as defined in the case of *State* v. *Lingman,* supra, This being the case, the jury was in the position of having to be satisfied that the negligence of the defendant contributed to the accident. No witness saw just how the accident happened. The witnesses in the car which followed Busby saw the decedent's hat fly off and later the body drop to the pavement but did not see the actual impact between the car and the decedent's body nor the conduct of the decedent immediately before the impact. The evidence was sufficient for the inference that the front of defendant's car struck the deceased. The glasses, presumably those of the decedent, were found on the crosswalk; hence the jury could have placed the decedent on the crosswalk when he was struck. There is a duty on the part of the driver to keep a lookout for pedestrians on the crosswalk even though such driver may have a green light. *State* v. *Adamson,* 101 Utah 534, 125 P. 2d 429. There is a presumption of fact which is already a part of our common law, that a person acts for his own safety. To repeat: The jury could *infer* from the evidence that defendant was under the influence of liquor at the time of the impact. It could further *infer* from his conduct that he was so badly under the influence of liquor that driving in that condition was itself a lack of due regard for the

safety of others and that he was, therefore, guilty of criminal negligence. So it could conclude from the presumption that a man acts for his own safety, that the decedent did not step or jump in front of the car. This presumption should at least serve the purpose of warding off the effect of a legal situation in which a conjecture that the cause of the accident was the negligence of decedent, is equally balanced with a conjecture that such negligence, if it existed, was not a cause of the accident if indeed under the circumstances of this case we can say that without such presumption the mind could be in equipoise in that manner. Thus the presumption that a man acts with regard to his own safety having performed the office of negating the conjecture that the decedent himself was the cause of the accident, the only other deduction is that it was caused by the defendant and if caused through his criminal negligence which as we have seen could be inferred, the jury could find him guilty. If a man so blind as not to be able to see pedestrians on the crosswalk kills one, are we to say that the jury cannot infer that defendant's condition was the cause of the accident because the jury would have to speculate that the deceased may have negligently stepped in front of the car? The above conclusion follows from a finding that the defendant failed to see the pedestrian and was unaware that he had hit him, a fact situation from which, with the evidence of drinking and intoxication, it could be inferred that defendant drove with a marked disregard for the safety of others.

If, on the other hand, the jury concluded that defendant did see the deceased but that he failed to stop and pick him up, it could infer from that a guilty knowledge that his own negligence had caused the accident. It is contended that his going on if he knew he had hit the deceased is equally compatible with a feeling of fright even though he knew he had not caused the accident. But every reasonable hypothesis consistent with innocence does not require that we construe a man's illegal act of fleeing

from the scene of the accident as a neutral factor in disclosing his guilty knowledge or the absence of it. *People* v. *Newland,* 15 Cal. 2d 678, 104 P. 2d 778; *People* v. *Robinson,* 49 Cal. App. 2d 576, 122 P. 2d 77. Public policy demands that a proper balance be struck between the protection which the law throws about an accused and the protection which the law attempts to afford society from the results of criminal conduct. We think a basis was laid in the evidence for an inference on the part of the jury that not only was Busby criminally negligent in driving his car while under the telling influence of liquor but that such negligence at least contributed to the accident as to justify a verdict of involuntary manslaughter. The judgment is affirmed.

LARSON, and McDONOUGH, JJ., concur.

MOFFAT, C. J., concurs in the result.

PRATT, J., on leave of absence.