## STATE v. BLEAZARD.

No. 6532. Decided February 8, 1943. (133 P. 2d 1000.)

*Fred R. Morgan,* of Hollywood, Cal., and *C. E. Norton,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Calvin L. Rampton,* Asst. Atty. Gen., for respondent.

WOLFE, Chief Justice.

The defendant, O. D. Bleazard, was convicted of the crime of involuntary manslaughter. From such conviction and from the sentence imposed pursuant thereto, this appeal is taken. There are several assignments of error, none of which go to the sufficiency of the evidence. However, a

short statement of the facts is necessary to a clear understanding of the assignments urged.

The charge was based upon a three car automobile collision which occurred on South State Street in Salt Lake County at about 8:45 p. m. on December 25, 1941. The accident resulted in the death of one Myra Gardiner, who, with her husband, was traveling north on State Street when the collision occurred. The defendant was traveling south. The accident occurred when the defendant, in passing another car, drove across the center line of the four lane highway and collided with the left front corner of the Gardiner car.

The State proceeded upon the theory that the defendant was driving while under the influence of liquor, and that while so driving he negligently crossed the center line of the highway causing a three car collision. The evidence discloses that two highway patrolmen, Mr. Van Otten and Mr. Elders, reached the scene of the accident shortly after it occurred. Both testified that they smelled liquor on the defendant's breath and both expressed the opinion that he was under the influence of liquor. Following the accident the defendant was taken to the Salt Lake County Hospital where he voluntarily gave a specimen of urine to Dr. Llewellyn. This specimen was analyzed for aloholic content. One Gilchrist, who qualified as an expert, testified that there is a direct ratio between the concentration of alcohol in the blood and in the urine of an individual. From the urine analysis of the specimen taken by Dr. Llewellyn, Gilchrist concluded that the defendant was under the influence of liquor to such a degree that his muscular coordination and mental facilities were materially impaired.

Appellant argues in his brief, without specifically assigning it as error, that the information was insufficient and that the court erred in failing to order the State to furnish a bill of particulars. The charging part of the information alleges:

"That the said O. D. Bleazard, on the 25th day of December, A. D. 1941 at the County of Salt Lake, State of Utah, unlawfully killed Myra Gardiner, without malice; contrary to the provisions of the Statute of the State of Utah, in such cases made and provided, and against the peace and dignity of the State of Utah."

This information is almost identical with the information upheld by this court in *State* v. *Anderson,* 100 Utah 468, 116 P. 2d 398. For the reasons stated in that opinion we hold that this information is sufficient.

It not appearing that the defendant ever made a demand for a bill of particulars, as he had a right to do under Sec. 105-21-9, R. S. U. 1933, he cannot now successfully urge that the court erred in failing to furnish such bill of particulars. *State* v. *Anderson,* 164 La. 696, 114 So. 598; *Martin* v. *United States,* 6 Cir., 20 F. 2d 785, 27 Am. Jur. p. 674, sec. 114.

We turn now to the specific assignment of error. The first assignment concerns the cross-examination of highway patrolman Van Otten. He was called by the State to identify a map prepared by him which gave certain measurements and attempted to locate the point of impact. On cross-examination he was asked the following question by counsel for defendant:

"In your opinion, is it not possible and probable that it was the crash of the Boyington car that caused the death of Mrs. Gardiner and not the impact with the Bleazard car?"

Counsel for the State objected that the question was not the subject of opinion evidence. The court sustained the objection and the defendant assigns this as error. The facts upon which his opinion would have been based were all before the jury. They were neither complicated nor technical so as to require interpretation by an expert. Under those circumstances a witness may not be permitted to give an opinion. It is not the province of a witness to act as a judge or jury, and "questions calling for his opinion should be so framed as to not call upon him to determine contro-

verted questions of fact or to pass upon the preponderance of testimony." Jones, The Law of Evidence, 2d Ed., p. 465, sec. 372. See also *People* v. *Schultz,* 260 Ill. 35, 102 N. E. 1045; *People* v. *Creasy,* 236 N. Y. 205, 140 N. E. 563; Annotation in 66 Am. Dec. 228.

Boyington, who was driving immediately behind the Gardiner car at the time of the accident, was called by the State. He testified on direct examination that he did not know with certainty what had happened; however, he stated that after the Bleazard car struck the Gardiner car, it swung around into his (Boyington's car.) After this latter collision between the Bleazard and Boyington cars, Boyington's car struck the rear end of the Gardiner car. On cross-examination, defendant's attorney asked:

"There were only three cars at the spot that it occurred, your car, the Gardiner car and the Bleazard car, and you testified that this [the Bleazard car] did not run behind that [the Gardiner car]. What other car was left to do the work of hitting this car, the Gardiner car, except your own?"

The court sustained an objection to this question on the grounds that it was argumentative, and the defendant assigned this ruling as error. When the question is read in connection with the several questions asked immediately preceding it, there can be no doubt that counsel was arguing with the witness. Defendant's counsel asked over and over again if he (Boyington) had crashed into the rear end of the Gardiner car. Each time he answered that he was not sure, but that if it did collide with the Gardiner car it was after the Bleazard car had struck both the Gardiner car and the Boyington car. We need not decide whether the ruling was proper for even if it were error it was not prejudicial, for Boyington had already answered similar questions several times.

The next assignment goes to the court's ruling in sustaining an objection to the cross-examination of Dr. Llewellyn concerning his personal observations as to whether

defendant was under the influence of liquor at the time the specimen of urine was taken. Dr. Llewellyn had not testified concerning this matter on direct examination. It is well established that cross-examination is limited in scope by the matters brought out in direct examination. *People* v. *Thiede,* 11 Utah 241, 39 P. 837; Jones, The Law of Evidence, 2d Ed., p. 1038, sec. 820.

Even had this been proper cross-examination, the defendants would not have been prejudiced by the refusal of the court to allow Dr. Llewellyn to answer the question, for the question was substantially reframed and Dr. Llewellyn testified that he did not notice or detect the odor of liquor on the defendant.

In the last assignment of error defendant contends that the court improperly presented two theories of the case to the jury without properly separating them. That is, the jury was instructed on driving under the influence of intoxicating liquor and also on driving on the wrong side of the highway.

In the instruction complained of the court first instructed the jury that it was "unlawful for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state" and then instructed that it was unlawful to drive a car across the center line of a highway when attempting to pass another car unless the left side was clearly visible and free from oncoming traffic for a sufficient distance to permit safe passing without interfering with the safe operation of any approaching vehicle.

Instruction No. 7, in part, instructed that in addition to driving in an unlawful manner in violation of the Statutes of the State of Utah as above set forth, you must find that the "unlawful driving of said automobile by the defendant, if any you shall find, was in a manner that was in disregard for the safety of others." In *State* v. *Lingman,* 97 Utah 180, 91 P. 2d 457, we held that in order to constitute criminal negligence there must be a marked

disregard for the safety of others. Instruction No. 7 does not use the word "marked" but we think that it was sufficiently plain to the jury from the facts and other instructions that only negligence and not slight disregard constitutes criminal negligence. Instruction No. 12 properly separated the two theories by instructing that "in order to convict the defendant you must unanimously agree that he committed one or both of the unlawful acts hereinbefore set forth. In other words, you should not find the defendant guilty if some one of you believe that the death of Myra Gardiner was caused by acts of the defendant in driving while under the influence of intoxicating liquor and others if you do not believe that but believe that the death of said Myra Gardiner was caused by the acts of the defendant in unlawfully driving on the left side of the road. To warrant a conviction you must unanimously find that either one or both of said acts were committed by the defendant." This same question was discussed at length in *State* v. *Rasmussen,* 92 Utah 357, 68 P. 2d 176. See also, *State* v. *Lingman,* supra. When these instructions are analyzed in the light of the discussions in these cases it will be readily seen that they sufficiently state the law applicable to this situation.

The only other point raised is that the court unduly emphasized the evidence which tended to show that the defendant was under the influence of liquor. We have examined the record in this regard and conclude that this contention is without merit.

There is no prejudicial error in the conviction of the defendant and said conviction is hereby affirmed.

LARSON, McDONOUGH, MOFFAT, and WADE, JJ., concur.