The STATE of Utah, Plaintiff and Respondent,

v.

Donald Leith CHRISTEAN and Vernon Wayne Rogers, Defendants and Appellants.

No. 13510.

Supreme Court of Utah.

March 25, 1975.

F. John Hill, of Salt Lake Legal Defender Assn., Salt Lake City, for Rogers.

Stephen W. Cook, Kinghorn, Oberhansley & O'Connell, Salt Lake City, for Christean.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff-respondent.

MAUGHAN, Justice:

Defendants were accused of the crime of first-degree murder. Upon trial before the court, they were convicted of second-degree murder and sentenced to the Utah State Prison for the term provided by law. They appeal.

According to the accomplice Christopher Eugene Leger, he, the defendants, and the victim, Richard Lynn Seldal were friends. Seldal and Rogers had been residing, with Christean and his wife and child, in an apartment. The friends had participated in certain criminal activities, including burglaries, and dissension had developed over the division of the fruits of these crimes and Seldal's careless use of a gun inside the house. Seldal was invited by the others to go to Morgan County to an isolated area for some target practice. They went to Morgan County the day after a local burglary had produced the shotgun (in evidence) and other items. One of the weapons they wished to test was this shotgun acquired in a recent burglary. There Seldal was requested to set up bottles, as targets; and while performing this task, Rogers, using a shotgun and Christean a .22 calibre rifle, opened fire on Seldal and killed him.

Leger testified that Rogers discharged the shotgun twice and that Christean fired the rifle six or seven times. Leger was given the shotgun and ordered to take it to the car. After Leger had arrived at the car he heard more than one shot from the rifle. Thereafter, the defendants returned to the vehicle. The pathologist, who conducted the post mortem upon Seldal, testified that the victim had been wounded by two shotgun blasts and ten .22 calibre bullets; three of the wounds from the .22 were inflicted at a time when the victim was already in severe shock.

After returning to Salt Lake City, the three survivors took an airplane the next day to the state of Washington, where they were subsequently arrested on warrants from this state. Originally, the three were charged, but the action against Leger was dismissed and he was granted immunity in return for his testimony.

At the commencement of the trial, the defendants made a motion to waive trial by jury. The trial court reasoned that Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), had excluded the imposition of the death penalty and therefore the statute prohibiting waiver of a jury in a capital case was inapplicable, Section 77–27–1, U.C.A.1953. The trial court, after examination of the defendants, granted the motion. The points Christean

raises on appeal, and as denominated in his brief, are treated seriatim.

■ Point 1–A—Trial by jury in capital cases may not be waived. This issue has been determined in State v. Kelsey, 532 P. 2d 1001, dated February 28, 1975, wherein this court held that the provisions of our law assuring trial by jury are for the benefit of the accused, which he may waive if he so desires.

Point 1–B—Defendant contends that he did not knowledgeably, competently, and knowingly waive his right to trial by jury. The sole ground for this assertion was a query by the trial court to defendant wherein he was asked whether he understood that he would have to be found guilty by a unanimous verdict of eight jurors, while in a trial before the court he would have a one-man jury rather than eight jurors.

Defendant relies upon State v. James, 30 Utah 2d 32, 512 P.2d 1031 (1973), wherein this court held that an accused charged with a capital offense is entitled to a twelve-man jury. Defendant urges that since the trial court erred by its comment that he was entitled to an eight-man jury, he did not knowingly waive his right.

■ Prior to the interrogation by the court, defense counsel had conducted a thorough examination of defendant to determine whether he understood the consequences of waiving a trial by jury. Defendant had responded to this extensive questioning and had waived his right. The additional questioning by the trial court was subsequent to the defendant's waiver and cannot be so construed as to detract from the actions previously taken by defendant.

Point II—Before a justice of the peace in Morgan County, the State made a motion to transfer the cause to Salt Lake County. After conferring with the defendant and his attorney, the motion was granted.

Defendant Christean urges that he had a constitutional right to have his case tried in the county wherein the offense was alleged to have been committed, Article VIII, Section 5, Constitution of Utah. He contends that the change in venue was improperly granted, since the State's motion was not supported by affidavit, was not predicated on the ground that a fair and impartial trial could not be had in Morgan County, and was granted for the convenience of the parties.

■■ Defendant, although represented by counsel, made no objection to the change of venue and thereafter asserted no objection thereto in either the City Court of Salt Lake City or the District Court of Salt Lake County. Under such circumstances he is deemed to have waived any objection to the change of venue. In White v. Rio Grande Western Ry. Co., 25 Utah 346, 357, 71 P. 593 (1903), this court held that a defendant can waive his right, under the Constitution, to have an action against him tried in the county where the cause of action arose.

Point III—Defendant contends that there was insufficient evidence to corroborate the testimony of accomplice Leger, and to support his conviction for second-degree murder.

State v. Baran, 25 Utah 2d 16, 17, 474 P.2d 728, 729 (1970) sets forth Section 77–31–18, U.C.A.1953, and this court's interpretation thereof:

A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient, if it merely shows the commission of the offense or the circumstances thereof.

In State v. Sinclair this court stated that the proper test to determine the sufficiency of the corroborative evidence was whether there was evidence, independent of the testimony of the accomplice, which the jury could reasonably believe tended to implicate and connect

the defendant with the commission of the crime.

In State v. Vigil [123 Utah 495, 260 P.2d 539] this court made the following definitive statement:

" . . . the corroboration need not go to all the material facts as testified by the accomplice, nor need it be sufficient in itself to support a conviction; it may be slight and entitled to little consideration. However, the corroborating evidence must connect the defendant with the commission of the offense [citation omitted]; and be consistent with his guilt and inconsistent with his innocence, [citation omitted]. The corroborating evidence must do more than cast a grave suspicion on the defendant and it must do all of these things without the aid of the testimony of the accomplice."

Christean urges that the corroborative evidence only casts a grave suspicion on him. The evidence available to the trial court shows he was observed in the company of Rogers, Leger, and Seldal (the victim) on the afternoon of the alleged homicide. The victim was shot with .22 calibre bullets, casings of which were found at the scene of the crime, and cartridges of the same calibre were found at Christean's residence.

■ Christean fled Utah with Leger and Rogers following commission of the crime, and attempted to avoid apprehension by the police in Washington. He urges that flight cannot be considered as consistent with guilt and inconsistent with innocence. In State v. Busby, 102 Utah 416, 421–422, 131 P.2d 510 (1942), this court observed that every reasonable hypothesis with innocence does not require this court to construe a man's illegal act of fleeing from the scene as a neutral factor in disclosing his guilty knowledge or the absence of it.

The testimony of Ken Rogers, brother of Vernon Wayne Rogers, concerning admissions by Christean as to his participation in the crime, coincides with the description by Leger. Kenneth Rogers testified that Christean told him that they'd shot Seldal. Christean stated that he had a rifle, and Wayne Rogers had a shotgun. Christean related that they had taken Seldal out in the "boondocks" to go shooting, had sent Seldal out to set up cans and bottles, and then opened fire on him. Christean verified that he had shot Seldal with a rifle.

■ This evidence, independent of Leger's testimony, was sufficient to implicate and connect defendant with the commission of the crime.

Defendant's fourth point is based on the assumption that the trial court erred in regard to the first three points on appeal. Without this basis of error, the fourth point is without merit.

The points Rogers raises on appeal, and as denominated by him, in his brief, are treated seriatim.

Rogers: Point I—The trial court erred in permitting defendant to waive trial by jury. This assignment of error is disposed of by the same reason which disposes of Christean's Point–A.

Point II—Rogers claims that he did not knowingly waive his right to trial by jury. Rogers had already been examined and waived his right, at the time the trial court made his comment to Christean, about the eight-man jury.

Point III—The evidence, independent of the testimony of accomplice Leger, does not tend to connect Rogers with the commission of the crime; and therefore, there is insufficient evidence to support Rogers' conviction.

Rogers was observed on the afternoon of the crime with the victim and later fled this jurisdiction with the others involved. The victim sustained wounds from a shotgun blast. Rogers had in his possession a shotgun at the time he arrived in Washington, and on the following day, when he took it into a pawnshop. Upon being asked if the shotgun were "hot" he responded "lukewarm." The testimony of the description of the shotgun matched in great detail the one in evidence, including its case.

Leger testified that Seldal had in his possession a pistol, which, in spite of repeated attempts by Seldal, would not fire because it did not have a clip. Prior to Seldal's death, Seldal had the pistol in his belt. A victim of a local burglary testified that his home was burglarized on August 17, 1972, and in addition to the shotgun in evidence (against Rogers) a 7.65 mm German pistol was taken; however, the clip to the weapon was missed by the burglars. Upon examination of Seldal's clothing after his death, five 7.65 cartridges were found by the authorities. When Rogers took the Browning shotgun to the pawnshop, he also had in his possession an automatic handgun. An employee, Larry Johnston, testified that he cocked the gun and attempted to pull the trigger and that he could not make the firing mechanism work. Rogers explained that the gun would not work without a clip, and it didn't have one. Rogers then proceeded to order a clip for it.

At a later time, Rogers told Johnston that a business deal they had was off because there was some "heat" on him. At the time Rogers was apprehended by the police, in Washington, he informed them that Leger was not as deeply involved, in the incident, as Christean was, and that Christean and Seldal had had a dispute over a large quantity of drugs and money. Leger had testified that Seldal and Christean had approximately $800 that they had acquired from Trolley Square, and that Rogers had requested Seldal divide his share. Seldal refused, and Rogers responded that he'd "get him one of these days."

In State v. Sinclair, 15 Utah 2d 162, 167–168, 389 P.2d 465 (1964), this court stated that it may well be that certain facets of the evidence, considered separately, could be regarded as not inculpatory and thus be vulnerable to the accused's claim that it does not connect him with the crime. However, the law does not require that the separate bits of evidence be viewed in isolation, for it is proper to take whatever fragments of proof that can be found and piece them together with the reasonable inferences to be drawn therefrom in order to fill in the whole mosaic of the crime. Although a conviction may not rest solely upon the testimony of an accomplice, all of the circumstances may be viewed together to determine the facts. The corroborative evidence should be considered in relation to the other facts appearing in the evidence of record. If, in utilizing this process, it can be accepted by reasonable minds, as evidence of substance and probative value tending to connect the defendant with the crime, the requirements of the law are fulfilled.

In the instant case, when the entire record of the trial which extended over a period of nineteen days, is considered, there emerges sufficient evidence to sustain the convictions on appeal, and this we do.

HENRIOD, C. J., and CROCKETT, ELLETT, and TUCKETT, JJ., concur.